# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **VERONICA GARCIA, and**<br>**THE ESTATE OF**<br>**JORGE ALBERTO CARRERA ALVAREZ;**<br>**and VERONICA GARCIA ,**<br>**On Behalf of the**<br>**Minor Children,**<br>**PAULINA CARRERA GARCIA,**<br>**PAMELA CARRERA GARCIA,**<br>**VICTORIA CARRERA GARCIA,**<br>**SOFIA CARRERA GARCIA.**<br><br>          **Plaintiffs,**<br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br>**ERIC H. HOLDER JR., Attorney General,**<br>**and STEVEN C. YARBROUGH,**<br>**Acting U.S. Attorney**<br>**For the District of New Mexico**<br><br>          **Defendants.** | § § § § § § § § § § § § § § § § § § § § § § | **CAUSE NO.**   Case Number 13-827 |

## COMPLAINT

**COME NOW**, The Plaintiffs Veronica Garcia, on her behalf and her children, and the Estate of Jorge Alberto Carrera Alvarez, by and through their attorney J. Marcos Perales-Piña, of Perales Law Group, and sue the Defendants, and in support of their complaint, would state as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs are residents of Dona Ana County, New Mexico during the alleged incidents.

2.      This action arises from a series of incidents which occurred in Dona Ana County.

3.      The Defendants are subject to this court's exclusive jurisdiction as predicated in 28 U.S.C. § 1346(b)(1).

4.      The plaintiffs have presented this claim to the appropriate Federal agency and their claim have been finally denied by the agency in writing. **Exhibit 1**.  28 U.S.C. § 2675(a).

5.      This action has commenced within the time limits required under 28 U.S.C. § 2401(b).

6.      Venue lies only in the district where the plaintiffs reside or where the act or omission at issue occurred. 28 U.S.C. § 1402(b).

7.      Ben Archer Health Center, Inc. is subject to the Federal Tort Claims Act Malpractice Coverage. **Exhibit 2**

8.      This Court has jurisdiction over the parties and the subject matter herein.

## **GENERAL ALLEGATIONS**

9.      Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 8 above and further allege:

10.     Jorge Alberto Carrera Alvarez is the late husband of Veronica Garcia.

11.     On or about June 22, 2011, Jorge Alberto Carrera Alvarez attended a dentist appointment at the Ben Archer Health Center in Las Cruces, New Mexico.

12.     He was there because of excessive bleeding on his gums.  At this appointment he was told that nothing seemed to be wrong and that he probably only needed a dental cleaning. The dentist proceeded with the cleaning, but had a really hard time stopping the bleeding of his gums.

13.     On July 5, 2011, Mr. Carrera and Ms. Garcia went to Ben Archer Health Center again. This time Mr. Carrera went to the clinic because he noticed some spots on his legs, he felt

his heart was beating way faster than normal, he felt chills, and he felt very tired.  Mr. Carrera was submitted to some blood work.

14.    On July 6, 2011, a nurse by the name of Lauri Greis, and unknown personnel, told Mr. Carrera that they had the results and that it appeared that he had leukemia, but that everything was fine.

15.    Mr. Carrera's blood work showed his red blood count as critical, and required an immediate transfusion.

16.    The nurse told Mr. Carrera that since he did not have health insurance he should go to Mexico, or that there was a place where people received medical treatment for free because it was where they would test medications to see if they worked.

17.    The nurse knew the seriousness of the results; however, she failed to show these to the any doctor.

18.    Mr Carrera got the blood test done because Ben Archer and its agents thought it was necessary.  The test was ordered because it gives information.

19.    Ben Archer and its agents failed to interpret the results accurately and/or to act on the urgency of the results.

20.    Once the Ben Archer and its agents received the information they had a duty to act based on the information;

21.    Ben Archer and its agents failed to act to a reasonable degree of medical provider acting under the same circumstances

22.     Mr. Carrera and his wife were then told to think about their options and to let them know once they had made a decision.  They were sent home.

23.   Mr. Carrera and his wife then left to his place of employment to let his supervisor know the situation.

24.   There they inquired about the possibility of getting health insurance.  Mr. Carrera's supervisor advised them that they could apply for the insurance but that the process would take time.

25.   That same afternoon when they got home, they received a phone call from Ben Archer Health Center.

26.   They were told that Mr. Carrera needed to drive to Albuquerque, NM, to see a doctor there because he needed a blood transfusion.

27.   Ms. Garcia advised them that they didn't have a car in good condition to get themselves to Albuquerque.

28.   Ms. Garcia was then placed on hold for about fifteen minutes.

29.   Ms. Garcia was then told to go to Thomason Hospital (University Medical Center) in El Paso, TX.  She was told that the doctor from Albuquerque would be flying in, and that he would be waiting for them there to start the blood transfusion.

30.   Ben Archer Employees sent the couple to University Medical Center in El Paso without proper arrangements, endangering his health, and most likely causing his death; when hospitals could have had treatment locally and immediately.

31.   Mr. Carrera and Ms. Garcia left to El Paso immediately.  About half way, in Canutillo, TX, Mr. Carrera's vision became blurred and he had to stop the car and have his wife drive.

32. When Mr. Carrera and his wife arrived at University Medical Center Hospital they inquired about the doctor who was supposed to be waiting for them.  They found out that none of that was true and that the hospital wasn't even aware of their situation.

33. Mr. Carrera passed away later after University Medical Center in El Paso started treatment.

34. Medical bills are owned to the medical providers for Jorge Alberto Carrera Alvarez;

35. Jorge Alberto Carrera Alvarez loss wages and value of life;

36. Jorge Alberto Carrera Alvarez had funeral expenses;

37. Jorge Alberto Carrera Alvarez had pain and suffering that could have been prevented but for the actions of Ben Archer Health Center (Ben Archer) Employees.

38. The Estate of Jorge Alberto Carrera Alvarez is represented by his Wife Veronica Garcia under a probate action filed in New Mexico Third Judicial District under PB-2011-118.

**Exhibit 3**

## CAUSES OF ACTION

39. Plaintiffs are entitled to recover damages from Defendants jointly and each of them based on the theories of liability allowed under New Mexico Law; hereinafter enumerated in Counts 1 through 9, and under such other theories of liability as may be appropriate based on the facts as alleged herein or as revealed during discovery.

## COUNT I

## LOSS OF CHANCE

40. Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 39 above and further allege

41. Jorge Alberto Carrera Alvarez came to Ben Archer with a medical illness;

42.   Ben Archer and its agents denied Jorge the most effective therapy for the patient's immediate medical problem.

43.   Ben Archer and its agents incorrectly diagnosed the most appropriate treatment for Jorge.

44.   Ben Archer and its agents failed to timely provide the proper treatment to Jorge.

45.   Ben Archer and its agents were under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified health care providers practicing under similar circumstances, giving due consideration to the locality involved.

46.   Ben Archer and its agents failed to timely or properly diagnose the presenting problem and follow an appropriate course of treatment.

47.   As result of the actions of the Ben Archer and its agents, Jorge suffered the loss of the opportunity for earlier and possibly more effective treatment.

48.   Because Ben Archer and its agents delayed the treatment Jorge lost a chance of survival to a reasonable degree of medical probability.

49.   Jorge was damaged by the percentage of chance of survival and the value of his total life.

50.   Plaintiffs suffered injuries and damages in amounts to be determined at trial.

## COUNT II

## NEGLIGENCE

51.   Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 50 above and further allege:

52.   Ben Archer and its agents had a general duty to provide competent care when treating a medical condition.

53.   The first person to ignore the abnormality of Plaintiff's case was Dentist Dr. Stevener. He failed to provide competent care when he failed to run any test and look further into

Plaintiff's situation when he had a difficult time stopping the bleeding on his gums after conducting a routine cleaning.

54.    Lauri Greis and unknown employees of Ben Archer,  also failed to provide competent care when she sent Plaintiff home after having interpreted the results of his tests.

55.    Ben Archer and its agents, failed to provide competent care because after he/she saw the results, he/she should have taken immediate action in getting Plaintiff to a facility where he could have been treated.

56.    Ben Archer and its agents, failed to provide competent care; in that it is responsible for the persons dealing with Plaintiff, with his condition, and with the information and options that were provided to him.

57.    Ben Archer and its agents, all failed to effectively manage and/or diagnose Plaintiff according to the results.

58.    Despite all having seen the test results, none of the Ben Archer and its agents acted according to the seriousness of Plaintiff's situation, they could have done more.

59.    As established in *Albert vs. Schultz,* 1999 NMSC-015, Defendants had a duty to provide Plaintiffs with any pertinent medical information.

60.    Ben Archer and its agents, failed to provide Plaintiffs with such information as if this had been the case, Plaintiff may have been saved.

61.    As established in *Gonzales vs. Sansoy,* 102 NM 136, 137 (1984), Ben Archer and its agents, had the duty to diagnose any relevant medical condition.

62.    In spite of the test results, Ben Archer and its agents sent Jorge Alberto Carrera Alvarez home until they realized their mistake.  For him, time was crucial and if diagnosed properly he could have been saved.

63. Ben Archer and its agents had a duty to interpret Plaintiff's test results in a reliable manner. Ben Archer and its agents acted carelessly by not giving Plaintiff's test results the seriousness they deserved.

64. Veronica Garcia and her children suffered emotional distress by witnessing his deterioration and death, and are entitle to economic compensation and damages.

65. Plaintiffs suffered injuries and damages in amounts to be determined at trial.

<u>**COUNT III**</u>

<u>**LOSS OF CONSORTIUM**</u>

66. Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 65 above and further allege:

67. Ben Archer and its agents actions caused the emotional distress of Veronica Garcia due to the loss of the society;

68. Ben Archer and its agents actions caused the emotional distress of Veronica Garcia due to the loss of guidance;

69. Ben Archer and its agents actions caused the emotional distress of Veronica Garcia due to the loss of companionship;

70. Ben Archer and its agents actions caused the emotional distress of Veronica Garcia due to the loss of sexual relations;

71. Ben Archer and its agents actions caused the emotional distress of Sofia Carrera Garcia due to the loss of the society,

72. Ben Archer and its agents actions caused the emotional distress of Sofia Carrera Garcia due to the loss of the guidance,

73. Ben Archer and its agents actions caused the emotional distress of Sofia Carrera Garcia due to the loss of the companionship,

74. Ben Archer and its agents actions caused the emotional distress of Victoria Carrera Garcia due to the loss of the society,

75. Ben Archer and its agents actions caused the emotional distress of Victoria Carrera Garcia due to the loss of the guidance,

76. Ben Archer and its agents actions caused the emotional distress of Victoria Carrera Garcia due to the loss of the companionship,

77. Ben Archer and its agents actions caused the emotional distress of Pamela Carrera Garcia due to the loss of the society,

78. Ben Archer and its agents actions caused the emotional distress of Pamela Carrera Garcia due to the loss of the guidance,

79. Ben Archer and its agents actions caused the emotional distress of Pamela Carrera Garcia due to the loss of the companionship,

80. Ben Archer and its agents actions caused the emotional distress of Paulina Carrera Garcia due to the loss of the society,

81. Ben Archer and its agents actions caused the emotional distress of Paulina Carrera Garcia due to the loss of the guidance,

82. Ben Archer and its agents actions caused the emotional distress of Paulina Carrera Garcia due to the loss of the companionship,

83. All the losses are a result from the injury to Jorge Alberto Carrera Alvarez by Ben Archer and its agents.

84. Plaintiffs suffered injuries and damages in amounts to be determined at trial.

## COUNT IV

## PRIMA FACIE TORT

85.  Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 84 above and further allege:

86.  Ben Archer and its agents acted intentionally when they ignored the result of the blood analysis by not acting immediately to prevent the injury to Jorge Alberto Carrera Alvarez.

87.  Ben Archer and its agents knew with certainty that the failure to act according within the reasonable actions of a medical provider  would cause harm to  Jorge Alberto Carrera Alvarez.

88.  Ben Archer and its agents 's actions caused Plaintiff's harm.

89.  That their conduct was not justifiable under all the circumstances.

90.  Plaintiffs suffered injuries and damages in amounts to be determined at trial.

## COUNT V

## VICARIOUS LIABILITY

91.  Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 90 above and further allege:

92.  Ben Archer employees were acting under the scope of their employment, and Ben Archer and its agents, and had sufficient discretionary or policy-making authority to speak and act for them with regard to the conduct at issue, independently of higher authority; or Ben Archer and its agents in some other way authorized, participated in or ratified the conduct of Ben Archer employees.

## COUNT VI

## MEDICAL MALPRACTICE

93.     Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 92 above and further allege:

94.     Ben Archer and its agents owed Jorge Alberto Carrera Alvarez a duty recognized by law;

95.     Ben Archer and its agents failed to conform to the recognized standard of medical practice in the community , and,

96.     The actions complained  were the proximate cause of Jorge Alberto Carrera Alvarez injuries

97.     Jorge Alberto Carrera Alvarez suffered injuries and damages in amounts to be determined at trial.

## COUNT VII

## WRONGFUL DEATH

98.     Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 97 above and further allege:

99.     Veronica Garcia as personal representative of The Estate Of Jorge Alberto Carrera Alvarez brings and action under New Mexico Wrongful Death Act, N.M.Stat.Ann. §§ 41-2-1 to 41-2-3 (1978);

100.    The children bring and action under New Mexico Wrongful Death Act, N.M.Stat.Ann. §§ 41-2-1 to 41-2-3 (1978).

101.    The death of Jorge Alberto Carrera Alvarez was caused by the wrongful act and/or neglect of the Jorge Alberto Carrera Alvarez.

102.   The death was result of Ben Archer and its agents failure to transfer Jorge Alberto Carrera Alvarez to a hospital better equipped to administer the treatment or to properly inform him of the immediate steps needed to prevent his death.

103.   The death was result of Ben Archer and its agents actions by directing to University Medical Center in El Paso without taking proper measures to have emergency personnel take him to El Paso and/or direct him to local facilities and/or forward the medical information to University Medical Center in El Paso

104.   Plaintiffs suffered injuries and damages in amounts to be determined at trial.

### COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105.   Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 104 above and further allege:

106.   The conduct of Ben Archer and its agents was extreme and outrageous under the circumstances; and

107.   Ben Archer and its agents acted intentionally or recklessly; and as a result of the conduct of Ben Archer and its agents, Veronica Garcia and her children experienced severe emotional distress.

108.   The conduct of Ben Archer and its agents was negligent under the circumstances; and

109.   Ben Archer and its agents acted negligently; and as a result of the conduct of Ben Archer and its agents, Veronica Garcia and her children experienced severe emotional distress.

110.   Plaintiffs suffered injuries and damages in amounts to be determined at trial.

## COUNT IX

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111.  Plaintiffs, re-allege and incorporate by reference all those facts and allegations in paragraphs 1 through 110 above and further allege:

112.  Veronica Garcia and her children had a close family relationship with Jorge Alberto Carrera Alvarez; and

113.  as a result of seeing or perceiving the occurrence of Jorge Alberto Carrera Alvarez losing consciousness while driving him to El Paso;

114.  Plaintiffs suffered severe emotional distress; and

115.  the occurrence resulted in death to Jorge Alberto Carrera Alvarez.


**WHEREFORE**, these Plaintiffs request the Court to enter judgment against Defendants for:

A.  Compensatory damages;

B.  Nominal damages;

C.  Loss of chance;

D.  Loss of services of spouse;

E.  Loss of consortium

F.  The reasonable expenses of necessary medical care, and treatment, and funeral and burial;

G.  The pain and suffering experienced by the deceased between the time of injury and death;

H.  The lost earnings, the lost earning capacity and the value of the lost household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy.

I.   The value of the deceased's life apart from his earning capacity;

J.   The emotional distress to the spouse caused by the loss of society, guidance, companionship, and sexual relations enjoyed with the deceased;

K.   The loss of guidance and counseling to the deceased's minor children;

L.   Award Plaintiffs' counsel reasonable attorneys' fees and costs.

M.   Grant to Plaintiffs such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

_____

J. Marcos Perales-Piña
Attorney for Plaintiffs
P.O. Box 8650
Las Cruces, NM 88006
(575) 523-0144 Tel.
(575) 523-0177 Fax